**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------------X
**SHARON EVANS DAVIS**                                           **Case No.:**
                                        **Plaintiff,**
                    -against-

**STEPHEN P. DEWEY &**
**THE FINANCE COMMITTEE OF**
      **CARDINAL SPELLMAN HIGH SCHOOL**
                              **Defendant.**
--------------------------------------------------------------------X
                    <u>**ORIGINAL COMPLAINT AND JURY DEMAND**</u>

Plaintiff Sharon Evans Davis ("Plaintiff" or "Ms. Davis"), a judgment debtor brings suit against Defendant Stephen P. Dewey, a debt collection attorney, and The Finance Committee of Cardinal Spellman High School ("CSHS") the judgement creditor. As attorney for CSHS, Mr. Dewey systematically, over a period of years, sent out information subpoenas and restraining notices to Ms. Davis's extended family members, her son, and her neighbor. Mr. Dewey had no reason to believe any of these people had property of Ms. Davis' or information about her assets. Mr. Dewey then immediately sent form letters stating he "will" or he "may" file contempt proceedings of the information was not immediately received. The purpose of these mass-sent written communications to third-parties was not to actually obtain information, but embarrass Ms. Evans before third-parties for the purpose of squeezing payment from an elderly, disabled, and otherwise judgment proof consumer. And the tactic worked.

## A. JURISDICTION AND VENUE

1.      The Court has federal question jurisdiction over the lawsuit because the action arises under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*., ("FDCPA"). Jurisdiction of the Court arises under 15 U.S.C. § 1692k (d) and 28 U.S.C. § 1331 because this dispute

1

involves predominant issues of federal law under the FDCPA. The Court has supplemental

jurisdiction under 28 U.S.C. §1367 over Plaintiff's state law claims because said claims are so

related to the claims within the Court's original jurisdiction that they form part of the same case

or controversy under Article 3 of the United States Constitution.

2.      Venue is properly laid within the Southern District of New York because the defendant

transacts business in that district and the conduct complained of occurred within that district,

specifically the Bronx.

## B. PARTIES

3.      Plaintiff, SHARON EVANS DAVIS, is an individual residing in Bronx County, New

York.

4.      Plaintiff is a "consumer" as defined by 15 U.S.C. §1692 (a)(3) because Ms. Davis was

alleged to owe tuition, which constitutes a "debt" under 15 U.S.C. § 1692(5).

5.      Defendant Stephen P. Dewey is an individual, who on information and belief, resides in the

State of New York.

6.       Defendant Stephen P. Dewey is a "debt collector" as defined in 15 U.S.C. §1692 (a)(6)

because he regularly collects or attempts to collect, directly or indirectly, debts owed, or due or

asserted to be due to another.  Specifically, Mr. Dewey regularly files collection lawsuits in civil

court and regularly issues information subpoenas and other mechanisms seeking to collect on

judgments on consumer debts.

## C. FACTUAL ALLEGATIONS

### Background

Last saved:  12/8/2016 7:50 PM

7.     The underlying putative debt arose from an act of love and concern. In 2005 Ms. Davis enrolled her two sons in Cardinal Spellman High School ("CSHS") because she wanted to provide her children with a proper education, which was not available at the under-performing high schools in the Bronx. She was granted loans to fund their tuition.

8.     In 2008, Ms. Davis began experiencing heart palpitations. She was diagnosed with a heart arrhythmia and became unable to work. As a result, Mr. Davis struggled to pay living expenses for herself and her children. She defaulted on the educational loans and her children were forced to withdraw from their high school. Ms. Davis' condition worsened when she suffered a severe stroke on February 13, 2013.  She is disabled.

9.     On July 15, 2013, Mr. Dewey filed a summons and complaint in the Civil Court of the City of New York, County of the Bronx, captioned *The Finance Committee of Cardinal Spellman High School v. Sharon Evans & Danny Scotland*, Court Index number 13-010233/BX.

10.     In July of 2013 Ms. Davis and CSHS were in the midst of settlement negotiations. Based on her conversations with representatives from CSHS, Ms. Davis believed that a settlement was imminent and that she therefore did not need to appear in the collections case. Ms. Davis failed to appear, and default judgment for $12,851.67 was entered against her on October 3, 2013.

11.     Incidentally, subsequent written communications between Ms. Davis and Mr. Dewey documented – from Mr. Dewey's own records – that he had at least inflated the amount owed, if not double sued on the same account.

### *Dewey's post-judgment collection activities violate the FDCPA and GBL 349.*

12.     In any event, after receiving the default judgment, Mr. Dewey sent information subpoenas with restraining notices to Ms. Davis's extended family members, her son, and her neighbor, along with correspondence making idle threats of contempt if the information were not provided.

13.     Mr. Dewey did not send the subpoenas out for the purpose of obtaining information. Mr. Dewey had no reason to believe that these recipients would have knowledge of asset information for execution.

14.     Rather, the purpose was to embarrass Ms. Davis before her extended family and neighbor, disclosing she owed a judgment, to pressure Ms. Davis to pay money. And that is exactly what happened: Ms. Davis paid money to Mr. Dewey in hope of Mr. Dewey ceasing contacting family members and neighbors, disclosing the debt, and embarrassing her.  Thus Ms. Davis was in fact the target of Mr. Dewey's debt collection activities because he sent the information subpoenas with restraints and threats of contempt to others for the very effective purpose of having Ms. Davis pay.

15.     Further, many of the questions sought to be answered—on pain of contempt—was for information Mr. Dewey already had.  For example, Defendant asked recipients to disclose Ms. Dewey's date of birth and social security number, even though that very information was contained in documents Mr. Dewey filed with the court (in redacted form) or sent to Ms. Davis.  Even though Mr. Dewey had Ms. Davis's address (he was sending correspondence to the address) and her phone number (his office had been speaking to her on the phone) the subpoena asks for Ms. Davis's address and phone number.

16.     The information subpoenas also sought—again under pain of contempt—irrelevant information that clearly suggested Mr. Dewey would contact other family members and children, such as the names and ages of her children and the address of the father of the children, and the name, address, and telephone number of each family member. The subpoena demanded that, if Ms. Davis did not own the car she was driving, the name, address, and telephone number of the owner.

17.     When the information subpoenas were not promptly executed and returned, Mr. Dewey sent follow up letters threatening that if the information subpoenas were not promptly completed,

Last saved:  12/8/2016 7:50 PM

executed, and returned that Mr. Dewey "will" or, in other letters, "may," institute contempt proceedings against the recipient.

18.     The obvious intent—and the clear result—was to frighten Ms. Davis' extended family, children, and neighbor to contact Ms. Davis to find out what was going on.  While Mr. Dewey sent the threatening documents to family members and neighbors, the obvious intent—and also the clear result—was for these threatening documents to be forwarded to Ms. Davis with demands to know what was going on.  What was this lawsuit about? Why aren't you paying your bills? Do you owe people money?  Why do they want this information? Will I be in contempt if I do not provide this information? Ms. Davis's extended family started gossiping among themselves about Ms. Davis's financial situation, further embarrassing her.

19.     Another indication that Mr. Dewey was mailing the information subpoenas and restraint as a pretext for pressuring Ms. Davis to pay is that the information subpoenas do not even *ask* whether the recipient has possession of property belonging to Ms. Evans.

20.     As a result of all of this, Ms. Davis felt pressured into making payment to Mr. Dewey in hope of having Mr. Dewey leave her family and neighbors alone, and to stop embarrassing her in front of them about not having been able to pay for all of the tuition for her children. Rather than stop however, Mr. Dewey apparently became emboldened that this tactic worked in squeezing payment because he continued to send out the information subpoenas and restraining notices, with threats of contempt, to other family members and neighbors. It proved an effective tactic to squeeze money from a disabled, low-income, judgment proof consumer from whom Mr. Dewey would not otherwise be able to extract money.

21.     The threats of contempt were also false. In order for an information subpoena and restraining notice to be enforceable, it must be served in the same manner as a summons and

Last saved:  12/8/2016 7:50 PM

complaint.  While the letters contend the documents were sent by certified mail, return receipt requested, on information and belief they were not.

22.     The following are, without limitation, examples of such written communications sent to third parties that Ms. Davis can document. There were other written communications that Ms. Davis does not currently have possession of.  The exhibits attached to this complaint are incorporated by reference in their entirety.

23.     On or about April 15, 2014, Mr. Dewey sent an Information Subpoena with Restraining Notice, with a cover letter, to Ms. Davis' son, Forrest Evans. *See* **Exhibit A**. Forrest Evans was not a party to the collection lawsuit.

24.     Just 10 days later, on or about April 26, 2014 Mr. Dewey sent the son a follow up letter threatening contempt for (allegedly) not returning an original, completed, notarized response to the information subpoena. *See* **Exhibit B**. Specifically, Mr. Dewey threatened the son, "that your failure to do so ***will*** result in our commencing proceedings against you for Contempt, an action which we trust will not be necessary" (emphasis added).  The letter continued, "[w]e have reason to believe that you are in possession of information which can lead to the Judgment Creditor's prompt collection of moneys due and owing to it."

25.     However, the threat of contempt was a threat Mr. Dewey apparently did not intend to follow through on. Mr. Dewey did not institute contempt proceedings against anyone who received an information subpoena and restraining notice.

26.     On or about December 9, 2015, Mr. Dewey sent a letter and Information Subpoena to Eleanor Davis, Plaintiff's aunt. **Exhibit C.** Eleanor Davis was not a party to the lawsuit.

27.     On or about December 9, 2015, Mr. Dewey sent a letter and Information Subpoena to Mayra Lopez, Plaintiff's aunt. **Exhibit D.** Ms. Lopez was not a party to the lawsuit.

28.     Just three weeks later, on or about December 31, 2015, Mr. Dewey sent a letter to Mayra Lopez that was almost identical to the form letter he sent to Ms. Davis's son on April 5, 2014, threatening to file contempt proceedings if the information subpoena is not executed, notarized and returned. **Exhibit E**.

29.     Mr. Dewey also sent similar written communications to extended family members of Ms. Davis' children's father, who Ms. Davis does not know and is not in contact with. Surely these communications were not sent for the purpose of gathering information about Ms. Davis' assets and location.

30.     Defendant's actions inflicted damages on Ms. Davis. A private person, Ms. Davis was embarrassed and humiliated that her neighbor and members of her family and former in-laws were informed about the debt. She felt helpless and she worried that the debt reflected poorly on her as a mother. When moving about her neighborhood, Ms. Davis constantly wondered how much her neighbors knew about the debt and whether they were talking about her behind her back. Her heart pounded when she thought about this – which was often – and she already has heart issues.  When her neighbor came to her with the subpoena, "it really got to me." She had trouble sleeping worrying who else might be getting these subpoenas.

31.     When Ms. Davis learned that her children's relatives on their father's side had learned of the debt, she was embarrassed and ashamed—she felt that the debt reflected her failings as a mother.

32.     The third party communications upset Ms. Davis' son, Forrest Evans, and her aunt, Eleanor Davis. They worried about Ms. Davis' financial situation and, in turn, Ms. Davis felt guilty about having upset them.

33.     Ms. Davis was also damaged by paying money on a judgment (for an amount she believes is wildly inflated, if owed at all) because of Mr. Dewey's false, deceptive, misleading, unfair, and

7

unconscionable debt collection means and communications.

## COUNT ONE:
## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

34.     Plaintiff repeats and re-alleges each and every allegation set forth in the above paragraphs of this complaint as if fully set forth herein.

35.     The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692 (e); *see also Hamilton v. United Healthcare of La., Inc.* 310 F.3d 385, 392 (5th Cir. 2002) ("Congress, through the FDCPA, has legislatively expressed a strong public policy disfavoring dishonest, abusive, and unfair consumer debt collection practices, and clearly intended the FDCPA to have a broad remedial scope.").

36.     Congress designed the FDCPA to be enforced primarily through private parties— such as plaintiff—acting as "private attorneys general." See S. Rep. No. 382, 95th Con,. 1st Sess. 5, ("[t]he committee views this legislation as primarily self-enforcing; consumers who have been subject to debt collection abuses will be enforcing compliance"); and *Jacobson v. Healthcare Fin. Servs.*, 516 F.3d 85, 91 (2d Cir. 2008) ("[i]n this way, the FDCPA enlists the efforts of sophisticated consumers like [plaintiff] as 'private attorneys general' to aid their less sophisticated Counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others.").

37.     The actions of Mr. Dewey enumerated above constitute an attempt to collect a debt or were taken in connection with an attempt to collect a debt within the meaning of the FDCPA.

8

38.      Mr. Dewey materially violated the following sections of the FDCPA: 15 U.S.C. §§ 1692c, 1692e, and 1692f.  By way of example and not limitation Defendant violated the FDCPA by taking the following actions in an attempt to collect a debt or in connection with an attempt to collect a debt: impermissibly communicating with a third party in connection with collecting a putative; using false, deceptive or misleading representations or means; misrepresenting the character, amount, or legal status of the debt; misrepresenting the services rendered or compensation which may be lawfully received; the false representation or implication that any individual is an attorney or that any communication is from an attorney; threatening to take and actually taking an action prohibited by law; communicating or threatening to communicate to any person credit information which is known or which should be known to be false; using any false, deceptive or misleading representations or means; using unfair or unconscionable means; and collecting or seeking to collect any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

## COUNT 2
## NEW YORK GENERAL BUSINESS LAW SECTION 349 *ET SEQ.*

39.      Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

40.      New York General Business Law § 349(a) prohibits "deceptive acts or practices in the conduct of any business, trade, or commerce, or in the furnishing of any service in this state…"

41.      An individual "injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages

Last saved:  12/8/2016 7:50 PM

or fifty dollars, whichever is greater, or both such action." N.Y. Gen. Bus. Law § 349(h). An individual may also be awarded punitive damages.

42.      Defendant violated N.Y. Gen. Bus. Law § 349 *et seq*. by using deceptive acts and practices in the conduct of their business that have broad impacts on consumers at large in the manner stated in the statement of facts. The deceptive misconduct appears to a modus operandi of Mr. Dewey. This is conduct that has occurred repeatedly over a period of years, not just once. The written communications sent to recipients are form letters threatening contempt and form information subpoenas that ask for information Mr. Dewey has, or ominously seeking names, addresses, and phone numbers for other family members, suggestively to send other such information subpoenas and bank restraints to.  Dewey sends a restraint (which allows him to threaten contempt), but does not even ask if the recipient has possession of property of the judgment debtor. Ecourts documents Mr. Dewey filing approximately 300 collection lawsuit in civil court alone to collect for CSHS.  Therefore, CSHS would be liable for the deceptive pattern and practice of misconduct Mr. Dewey commits on behalf of and for the benefit of judgment creditors, including CSHS.

43.      For these reason and for the other reasons stated in the statement of facts, Defendants' conduct evidences a high degree of moral culpability, or is so flagrant as to transcend mere carelessness, or constitutes willful or wanton negligence or recklessness to justify a punitive damage award. Defendant's wrongful and deceptive acts caused injury and damages to Plaintiff.

44.      As a direct and proximate result of those violations of N.Y. Gen. Bus. Law § 349 *et seq*, Ms. Davis suffered compensable harm and is entitled to preliminary and permanent injunctive relief, and to recover actual, treble, exemplary, and punitive damages, together with

Last saved:  12/8/2016 7:50 PM

costs and attorney's fees.

## **PRAYER**

45.     WHEREFORE, Plaintiff requests the following relief:

   **a.** A declaration that Defendants have committed the violations of law alleged in this action;

   **b.** Actual damages, treble, exemplary, and punitive damages against Defendants;

   **c.** Statutory damages under 15 U.S.C. § 1692k against Mr. Dewey;

   **d.** Statutory damages against Defendants under GBL § 349;

   **e.** An order awarding disbursements, costs, and attorneys' fees under 15 U.S.C. § 1692k against Mr. Dewey and GBL § 349 against Defendants;

   **f.** Prejudgment and post judgment interest as allowed by law;

   **g.** All other relief, in law and in equity, both special and general, to which Plaintiff may be justly entitled.

## **JURY DEMAND.**

54.     Plaintiff demands a trial by jury.


DATED: Brooklyn, New York
          December 8, 2016

          By: *Ahmad Keshavarz*

          Ahmad Keshavarz
          The Law Office of Ahmad Keshavarz
          16 Court St., 26th Floor
          Brooklyn, NY 11241-1026
          Phone: (718) 522-7900
          Fax:     (877) 496-7809
          Email: ahmad@NewYorkConsumerAttorney.com

Last saved:  12/8/2016 7:50 PM